**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Teresa Irene Andrick, | No. CV-21-08051-PCT-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

On October 11, 2017, Claimant protectively filed for Supplemental Security Income, alleging disability as of the application filing date. (AR 94, 231-39.) The agency denied her claims initially and on reconsideration. (AR 94, 126.) After a hearing (AR 33-71), an agency administrative law judge ("ALJ") issued a decision on July 8, 2020, finding Claimant not disabled (AR 1032). On January 15, 2021, the agency's Appeals Council found no reason to review the ALJ's decision, which made the ALJ's decision the agency's final decision. (AR 1-6.) Claimant now seeks judicial review of that adverse decision.

**I. Standard**

On review, the Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the agency's disability determination only if it is not supported by substantial evidence or is based on legal error.

*Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* This "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 690 (9th Cir. 2009). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

When evaluating a disability claim, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the agency at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the analysis proceeds. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work ("PRW"). 20 C.F.R § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**II. Analysis**

    **A. Claimant's RFC**

Claimant levies three challenges to the ALJ's RFC finding.

First, Claimant argues that the ALJ failed to discuss and ultimately include mental limitations he found credible in formulating the RFC at step four. The Court agrees. An

ALJ must consider all limitations when assessing a claimant's RFC, even if those limitations are found to be non-severe. 20 C.F.R. § 404.1545(a)(2). The ALJ did not so here. At step two, the ALJ performed a "paragraph B" analysis, determining the mental disabilities that Claimant might have—and Claimant does not challenge this analysis. (AR 19.) However, the ALJ's decision does not explain why the mild mental limitation he found credible was not included in the RFC.

The agency argues that the ALJ incorporated the paragraph B analysis by reference into the step four analysis, thus proffering an explanation for excluding mental limitations from the RFC. This is a nonstarter. The ALJ merely stated that "[t]he following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function." (*Id.*) This statement doesn't explain why the ALJ did not include any mental limitations in the RFC; it merely suggests that if a paragraph B limitation doesn't appear in the RFC, it's because the ALJ found that it wouldn't restrict Claimant's ability to work. Remand is warranted so the ALJ can explain how and why he reached that conclusion.

Next, Claimant contends the ALJ failed to consider the combined impact of Claimant's non-severe impairments, which caused her to visit the emergency room about 30 times in less than a year. The Court agrees. The ALJ's decision does not consider whether Claimant, who visited the emergency room at least 30 times in 11 months in addition to her other physician and therapeutic visits, could sustain work activity "on a regular and continuing basis . . . for 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. Remand is warranted so that the ALJ can consider the combined impact of Claimant's non-severe impairments.

Finally, Claimant maintains that the ALJ improperly relied on outdated medical opinions by state agency consultants over other physicians with knowledge of Claimant's entire medical history. In other words, Claimant argues that substantial evidence does not support the weight that the ALJ gave to opinions of the state agency consultants because those consultants did not consider the entire record and their opinions were thus not

supported or consistent, the two elements an ALJ must consider when determining the persuasive weight of a medical opinion. 20 C.F.R. § 416c(c)(1). The Court disagrees. The ALJ explained that many of the limitations opined by the state agency consultants persisted through the medical record that they did not review but which the ALJ did. (AR 25.) Substantial evidence supports the ALJ's finding that the opinions of the state agency consultants were supported by and consistent with the medical record and therefore entitled to persuasive weight. There is no error.

**B. PRW**

Claimant argues that the ALJ erred by finding that she could perform her PRW as generally performed because the position was actually a composite job. The agency attacks this argument first on waiver grounds. But a claimant who raises the issue with the Appeals Council preserves it—even if she didn't first raise the issue before the ALJ. *Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017) ("Issues raised to the Appeals Council but not to the ALJ are not forfeited."). Because Claimant presented this argument to the Appeals Counsel (AR 360), she has not waived this argument.

Now, to the merits. At step four, an ALJ determines whether the claimant may perform her PRW. The ALJ must evaluate the jobs "according to the particular facts of each individual case" and should generally afford a highly probative view of the claimant's own description of the work. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir.1993); *see also* SSR 82–62 ("the claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands, and non-exertional demands of such work").

Claimant's argument attacks the ALJ's step four finding that she can perform her PRW, arguing that the ALJ erred by finding her PRW covered by DOT 189.167-018, that of a Management Trainee. Claimant specifically attacks this listing as failing to encompass all the duties of her PRW, which she contends is a composite job, which contains "significant elements of two or more occupations and, as such, [has] no counterpart in the DOT." SSR 82-61. That is, it may take "multiple DOT occupations to locate the main

duties of the PRW as described by the claimant." Program Operations Manual System 25005.020(B).[1]

And Claimant has the right instincts. When a claimant's PRW is a composite job, step four becomes fraught; ALJs must be careful not to evaluate the PRW under a single DOT listing. This is because it is error to find a claimant able to perform past relevant work according to the least demanding aspect of a past job—not the full spectrum of the significant duties performed in that past job. *Stacy v. Colvin*, 825 F.3d 563, 570 (9th Cir. 2016); *see also Lingenfelter v. Colvin*, No. 3:14-CV-00202-MMD, 2015 WL 2194310, at *6 (D. Nev. May 11, 2015) (finding error where an ALJ evaluated a claimant's ability to perform her PRW under a single DOT listing when the PRW, in fact, was a composite job).

Nevertheless, the Court need not determine whether Claimant's PRW is a composite job—the Court cannot step into the VE's workboots and dredge up a job listing or listings from the DOT with steel-toed assurance. All the Court needs to determine is whether Claimant carried her burden to show that "the duties in [her] line of work were not those envisaged by the drafters of the [DOT listing]." *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986). If she carries this burden, the ALJ erred by measuring the Claimant's ability to perform her PRW against a DOT listing that did not encompass the totality of her PRW. *Stacy*, 825 F.3d at 570.

The ALJ here found that Claimant's PRW was encompassed by DOT 189.167-018, that of a Management Trainee.[2] (AR 25.) A Management Trainee:

> Performs assigned duties, under direction of experienced personnel, to gain knowledge and experience required for promotion to management positions: Receives training and performs duties in several departments, such as credit, customer relations, accounting, or sales, to become familiar with line and staff functions, operations, management viewpoints, and company policies and practices that affect each phase of business. Observes experienced workers to acquire knowledge of methods, procedures, and standards required for performance of departmental duties. Workers are usually trained in functions and operations of related departments to facilitate subsequent transferability between

---

[1] Available at https://secure.ssa.gov/poms.nsf/lnx/0425005020.
[2] Curiously, the ALJ referred to this DOT listing as "assistant retail manager," a title which appears nowhere in the DOT 189.167-018 listing. (AR 25.)

>departments and to provide greater promotional opportunities.
>May be required to attend company-sponsored training classes.

189.167-018 Management Trainee, DOT 189.167-018. Ultimately, as one might expect from the job title, the position duties primarily focus on learning how to manage and not actually managing. And in the limited time that a management trainee apes a portion of managerial duties, she does so under the watchful supervision of an actual manager.

Claimant's testimony does not support finding that she, in her assistant retail manager position at Goodys, was (1) primarily responsible for learning the duties of managers and the company policies or (2) in a program intended to promote her into management. (AR 65-68.) Instead, Claimant's testimony tends to show that she was not learning on the job and that she was already performing classic managerial duties—counting tills, opening and closing the store, supervising other employees, all without a manager coaching her through management tasks or observing managers performing the relevant tasks before trying her hand at them. (AR 65-66.) The agency points to no evidence to the contrary. Claimant has shown that her line of work—actually managing—is not envisaged by the Management Trainee listing, which focuses entirely on an employee learning how to actually manage.

The agency argues that Management Trainee consisted of a "variety of duties" in several departments, thus encompassing the day-to-day tasks that Claimant undertook as an assistant retail manager. But this, while relevant, does not address the crucial distinction between Claimant's line of work and the DOT listing for Management Trainee. In Claimant's position, she was expected to use management skills she already had; a Management Trainee is expected to acquire those skills under the tutelage of "experienced personnel" and with an eye towards promotion into a management position where she would employ those skills. Finding Claimant not disabled because she could work as a trainee for the position she actually held is like finding that a knight is not disabled because he can perform his past relevant work as a squire, or that a leading lady is not disabled because she can perform her past relevant work as a stagehand.

### III. Conclusion

For the above errors, remand is appropriate. On remand, the ALJ must

1. reevaluate Claimant's RFC and explain why any limitations found at step two are not included in the RFC;

2. Consider the combined impact of Claimant's non-severe impairments, specifically the frequent emergency room visits occasioned by those impairments; and

3. Conduct the step four analysis based on a DOT listing—or listings—that appropriately reflects Claimant's PRW.

**IT IS ORDERED** that the agency's decision is **VACATED** and **REMANDED** for proceedings consistent with this order. The Clerk is directed to enter judgment accordingly and terminate this case.

Dated this 19th day of April, 2023.

Douglas L. Rayes
United States District Judge